I had assumed that I would spend a decent amount of time responding to the arguments that were made by the appellant. Basically, I would, if the Court has questions, I'd be happy to answer those. Otherwise, I have four issues that I would raise. I appreciate that. What if the sham affidavit principle were not to be applied? Would that change your view of the case? If it were to be completely not applied. All right. And we would just do except, you know, the declaration, which is inconsistent with this deposition. Would that be a factual issue, then, that would defeat summary judgment? The hostile environment claim would become a much closer, much, much closer case. Ultimately, it's sort of a convergence of this issue that's been raised by the Ninth Circuit before, that simple name calling is not enough. And I haven't seen any cases that deal with a lot of simple name calling. And that's what we would have here. We would have basically what would amount to something like 500 times that he was called OG in a period of two and a half years. So I suppose that would amount to, what, once a day? Once every other day, he was called OG by someone who he couldn't identify. I would argue that even if you were to find that the court abuses discretion below, that that still wouldn't be enough. I mean, I've never really seen any hostile environment claims where there wasn't something more than simple name calling, where there wasn't some threat to physical safety or some sexual touching or some, you know, something that actually affected the employment. I mean, what's kind of interesting here is that. You would say it did not have any adverse effect upon his employment. Exactly. And this is kind of a unique case. In addition, I mean, maybe you could say in some abstract case, if someone were having to work with someone who on a daily basis said, call them a derogatory name, that that could make it difficult to do his or her job. But what's interesting here is the record is clear that Mr. Stevens worked by himself. He did his job by himself. In the first stage, he was working the night shift at the camp. And there he was working on his own. And the only interaction he had was when he needed a break and he didn't get them. And then once he was transferred, he was working functionally alone in the control room while he couldn't restrain wards due to his injury. So, you know, it's hard to see how under really any circumstance, simple name calling could affect his particular employment. So why would that create a tribal issue of fact? Well, I'm not sure. It depends on what you mean by tribal issue of fact. I mean, one of the interesting things here is, and I think what made it a little simpler for the district court, is this wasn't a case where the plaintiff was arguing that there was some dispute of material fact. The facts were undisputed. And I could discuss that in more detail. I mean, there were basically three categories of facts that were raised in the motion. I mean, the first was, what did Mr. Stevens say? I mean, the vast majority of our motion was based on what Mr. Stevens testified in his deposition. The second issue that, the second factual category of testimony was an issue of what information was available to the decision makers who were making the decisions that are challenged. And again, that was really not an issue where material facts could be in dispute, because they had the only source of information about what they knew, and it was undisputed what they knew. And then the third category where, is the only category where there could have been some dispute as to merit material fact, was the issue of sort of the general background of the way that the facility operated and, you know, whether or not Camp Glenwood was a better place to work than Hillcrest Juvenile Hall. Now, there could have theoretically been a material dispute of fact, but there wasn't. So if you're asking, yeah, I'm sorry, if you might ask the question again, maybe I, it's a far field. Your response to the fact, if we credit the affidavit, your response is, well, it's a little harder case. It's a closer case. You might have to infer this. But if we credit the affidavit, then we come closer to the state where there might be a genuine issue of material fact. I mean, I guess that's to the hostile work environment. Now, whether or not you've got causation and damage and so forth, that's a whole other issue. I mean, that's something that underlies all hostile environment cases. I mean, when is there enough to get to a jury? And I guess I would just pause it in light of the fact that regardless of whether you credit the affidavit, you're dealing with, you know, a relatively innocuous name that was called to him, that was used to describe him by people he couldn't identify maybe once a day for two and a half years. But that's just not going to be a jury question. I mean, that's just not it's just not close enough to get to a jury. When I say it's a close case, I don't mean that it's close to whether or not he is going to win. I'm saying it's a close case as to whether or not maybe you deny summary judgment. I know that's what I was talking. Yeah, no, and I appreciate that. It's just under the case law. There's no case that I could find where you just dealt with simple teasing alone, standing alone. I'm not saying that there might not be a case somewhere where there was 10 times a day in every employee. But that's just not this case. I'll ask you one more question. On the retaliation claim, he was moved from employment scenario A to employment scenario B. And you can argue that they're similar, that there is really no difference, et cetera, et cetera, between the two. But would that not be a factual question to determine whether that would constitute an adverse employment action? I'm sorry, was the question whether that would be a fact question? Yeah. On the retaliation. In the abstract, perhaps. But in this particular case, no, for a couple of reasons. I mean, one is there's an objective and a subjective component to adverse employment and an adverse employment action. I think at least I think there has to be in this case, because in well, actually, let me step back for a second. At a minimum, there needs to be an objective component to an adverse employment. And I'm not going to go into the specifics of the objective component, but I'm going to say that there is an objective component to an adverse employment and an adverse employment action. If he was transferred from one place to another place, they had different hours of duty, different somewhat responsibilities, why would that not be sufficient to satisfy a prima facie retaliation claim? Again, in the abstract, it would, but in this case, there was no evidence of that. Here. There's evidence that he was transferred to a different location. Correct. There's evidence that they were, they required different hours, I guess, and the basic nature of the jobs might arguably be found by a fact finder to be different. Would that not be an issue of fact? Again, Your Honor, if there had been evidence of that, yes, the only evidence was, and you raised two parts of it, was one, that he was transferred. That's absolutely true. I agree with that. Now, there is case law, and it's cited in the brief, that simply transferring someone standing alone is an adverse employment action. There's also, you're absolutely correct, that his hours changed. There's no question about that. I haven't found any cases that suggest that your hours changing, standing alone, would create, or in conjunction with a move, would be an adverse employment action. That's it. I mean, there was no evidence that there was any change in duty, and all there was, the only evidence in the record, was his subjective view that one was preferable than the other, and what was kind of interesting about that was that subjective declaration didn't make any sense, because basically what he said was, the haul was subjectively... If I were to disagree with you, and with all due respect, believe that that should be something that a fact finder should flush out, would you still be able to survive summary judgment-wise on your retaliation claim, notwithstanding that? Oh, yes, Your Honor, because there were three other reasons why his... And if we're talking about... The adverse employment action came up, of course, in both the retaliation theories and the discrimination theories, and I think that between all of them, there were, I guess, 12 theories, four events, discrimination on race and age in both, and retaliation in all four. But ultimately, in every single case, he wasn't able to make a prima facie case. I mean, adverse employment action being one, of course, element of the prima facie case, but he couldn't establish the other elements of the prima facie case. Which other elements on the retaliation claim was he deficient in, aside from adverse employment action? Causation. He didn't have any evidence on causation. He wanted to proceed solely on the temporal... He wanted to establish the causation prong of... It's close in time, isn't it, between the complaint and the alleged adverse action? Oh, no, Your Honor. And then there's actually a second problem with that as well. The first is the issue of time. And there, below what the argument was, was that it was four months. And I've cited cases in the brief, none in the Ninth Circuit, that stand for the proposition that three months is not enough. If you're going solely on temporal proximity, I'm not suggesting that there aren't cases where in three months it can be causation. But if your sole basis to establish causation is temporal proximity, three months isn't enough. And actually, since... There were two circuits that had adopted the three- to four-month rule when I briefed it. There have now been two other circuits that have also adopted that rule. And I could cite the cases. I discovered them last night. So aside from the temporal proximity, what else do you think is deficient? The other problem, of course, is that even if you assume that he did establish a prima facie case, which, of course, is contrary to what the district court found, on top of that, he then never provided any evidence whatsoever to rebut the legitimate... So that's the ultimate core issue. There was nothing that he submitted to rebut the justification for the move that was proffered by the employee. Oh, yes, Your Honor. That's absolutely right. I mean, it seems to me it makes it down, at least on one or two of the claims, as to whether or not he established pretext, tended enough evidence to establish a genuine initial material fact on pretext. And I think the plaintiff's case is pretty weak on that. But, you know, I think he probably has enough on an adverse employment, actually, I've got to be honest with you. I mean, he says he was transferred, his hours changed, and it was adverse to him because he had to take care of his daughter. He eventually had to quit because of the bad hours and so forth. You tender some evidence saying, well, it was a legitimate change and really was not in the context of this job of demotion or adverse. But, you know, it was adverse as to him, he claims. Well, I certainly would be satisfied if the court were to uphold the decision below based on the failure to rebut the legitimate reason. For the purposes of this argument, I would just pose my own question to the extent that that's permissible, which is if simply moving someone and changing their hours is an adverse employment action, one, you're basically creating a disparate treatment claim whenever you address harassment. I mean, you don't have to paint with that broad a brush. It depends on the individual case. Well, Your Honor, I mean, ultimately, I'm doing my best to respond to the hypothetical, which is based on these facts where all you've got is he's moved and his hours change. And he says it's less desirable. You say it's actually more desirable. Well, but, Your Honor, well, I guess that's right to the extent that simply a subjective view of desirability without any foundation or supporting evidence other than a statement of subjective preference were enough to create an adverse employment. He said I needed this shift to take care of my daughter's medical condition. So the theory would be that your client transferred him knowing that it would force him to quit by putting him in a new facility. That's the best light you can spin on his theory. But it's a theory that arguably could be construed an adverse employment action. I'm sorry, Your Honor. I obviously have no desire to ‑‑ well, it's an interesting issue. I mean, again, hypothetically, if there were evidence of some kind that the decision maker at the time they made the decision to transfer knew that there were specific instances, specific facts with respect to that employee that would make the change less desirable and did it anyway, I think that Your Honor is right, that that would be a much better case for an adverse employment action. Here, these issues with the daughter, those were not made ‑‑ the decision maker on the transfer was not aware of those and there's no evidence. I'm just reacting to your statement that if we somehow said that this was an adverse employment action, we would be crippling your industry for all cases. Of course, I'm exaggerating. I appreciate that. I appreciate that, Your Honor. But no, actually, I mean, I know that my statement was broad, but I don't think it was quite that broad. What I was trying to say was that here in this specific case, the only facts with respect to the transfer, the only facts that would support a conclusion theoretically that it was an adverse employment action was the fact that here he was transferred to someplace else and his hours changed. I mean, in this particular case. And what I'm saying is if those two factors standing alone are enough to create an adverse employment action, you're really disincentivizing employees to take proactive action to respond to harassment because basically at the moment that you transfer someone, you're almost inevitably going ‑‑ well, number one, you're going to be moving them and I suppose there's a chance that you're not changing their hours, but you're going to be making some other relatively insignificant change whenever you do that. So whenever you move to remedy hostile environment by conducting a transfer, you're going to be creating an intentional discrimination claim. And that's basically ‑‑ you're at least going to ‑‑ It's really not an unusual situation. We do get claims all the time where someone's adjusted either based on seniority basis or some other basis and their hours are at issue as to whether or not ‑‑ Actually, until this case, nobody really seemed to dispute that an hour change can be considered an adverse employment action in some context, not necessarily by itself, but that there are more desirable hours and less desirable hours. And I would agree with that. I would absolutely agree with that. That's absolutely right as far as we're concerned. It just wouldn't affect the conclusion here specifically whether there was an adverse employment action. I mean, simply because here all you have is the hour change without any context as far as the decision maker knowing that that hour change would be unfavorable. When he was moved to Hillcrest, that was actually closer to his home, right? Correct. It was closer to his home. As I understood, also because of his limited workability that Hillcrest was easier because it was a lockdown facility. So he didn't have to be moving around as much. Was that sort of an after acquired justification or was that running through somebody's head at the time he was moved? Oh, it was exactly the reason that he was moved. When he had ‑‑ He wasn't moved to address the incident at Glenwood? It was both. I mean, what happened was he had the altercation with his colleague, Vincent Obiagulu, and then a decision was made, okay, we're not going to discipline these two employees, but we have got to separate them. I mean, it would be ‑‑ it's a flammable situation. We've got to separate them. This is the analysis, and it's laid out. I can identify in the record. There's actually two places where it's laid out, but the best place, and I can get the record citation, but there is a letter that goes out from not from the department, but our employee relations manager who was supervising the action, that they had to be separated. And so when the decision was made that they had to be separated and they had to have some level of supervision, at that point, one of them had to be transferred. There was no question about it. It was impossible to keep both of them in Glenwood and keep them separate and have them supervised. To cut to the chase, I think, basically, as I read the record, what your client was saying is, look, we have to separate them, and this is a more favorable environment for him. He says, no, it wasn't. And whether or not we need to particularly resolve that is perhaps, you know. I would agree it doesn't have to be resolved. I was just trying to respond to the question, and I think that you were trying to separate those two employees, and your position is that you were actually doing Mr. Stevens a favor by putting him in this other facility. No, I wouldn't say that. I would say that we had no choice, because once we decided that we had to separate them and we knew that he could not restrain wards, the only shift available was in Hillcrest. So the combination of the two together, I mean, I guess you could say that even if we hadn't made the decision to separate them, we still would have had to transfer him to Hillcrest. I guess that's probably true. I mean, I was trying to respond. What the decision-makers were thinking is they were thinking of both those together. We need to separate him from Obi Ajulu, and we need to put him in an environment where he's safe. So when you're answering Judge Bybee and you said we knew it was closer to his home, that didn't enter in? No. No, I would say it didn't enter in. I mean, it's just a fact of the matter. It was closer to his home. It wasn't better. But we weren't trying to find a better place for him. We were told by his doctor that he could not restrain wards. The only position available where you didn't restrain wards was in this control room. I mean, that was the only place to put him. So it really – I'd like to say that we thought about what was best for him. I can't – the record is quiet on that. I mean, really, we were dealing with a number of limitations, and we put him where we had to put him. And it turned out – I mean, the reason that evidence was in the record is he was saying that this was an adverse employment action, and it was inferior, and we were trying to respond to that and say – Yeah, a move from Glenwood to Hillcrest had been a move from San Diego to Redding. We might have understood that it was less convenient for him. It didn't enter into the factor, but it was at least a thinking that, on retrospect, that this wasn't as inconvenient as maybe – It basically undercuts – when I said – this goes back to what I said earlier, Judge Block, about the issue of objectiveness. It goes back to the objective preference between the two places. It goes to the issue of, well, which one is better? I mean, is there an objective basis to say that he was put in a worse place? And I think that it's fair to say that, considering it was closer to his home and closer to every – I guess the other thing in context, and I believe this is in the record, is Glenwood is in the middle of nowhere. It's not – there's no one who is going to be closer to Glenwood than they are to Hillcrest. Glenwood is up in the – if you knew northern California, it's basically in the middle of the forest. And so it wouldn't be more convenient for anyone to work in Glenwood. No one would live closer to Glenwood than Hillcrest. Thank you, counsel. Thank you. The case has now been submitted for decision. And we'll see the last case on our argument calendar today, State v. San Francisco.
judges: Thomas, Bybee, Block